UNITED STATES DISTRICT COURT <u>FOR ONLINE PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK

---

CHRISTOPHER SILVA, individually on behalf of himself and all others similarly situated,

                           Plaintiff,

            - versus -

SMUCKER NATURAL FOODS, INC., and J.M. SMUCKER CO.,

                   Defendants.

MEMORANDUM
<u>AND ORDER</u>
14-CV-6154 (JG)(RML)

---

A P P E A R A N C E S:

> THE SULTZER LAW GROUP P.C.
>     77 Water Street, 8th Floor
>     New York, NY 10005
> By:   Joseph Lipari, Esq.
>        Jason P. Sultzer, Esq.
>        *Attorneys for Plaintiff*
>
> JONES DAY
>     222 East 41st Street
>     New York, NY 10017
> By:   Kevin D. Boyce, Esq.
>        Mark Mansour, Esq.
>        Jennifer Del Medico, Esq.
>        *Attorneys for Defendants*

JOHN GLEESON, United States District Judge:

        Christopher Silva has brought a putative class action against defendants Smucker

Natural Foods, Inc., and J.M. Smucker Company (collectively, "Smucker") alleging violations of

New York consumer statutes and New York common law with respect to the sale of Natural

Brew® Draft Root Beer ("Natural Brew").

Smucker now moves to dismiss.  For the reasons stated below, the motion is granted in part and denied in part.

BACKGROUND

The Class Action Complaint ("CAC") charges six causes of action under New York law against Smucker: violations of New York General Business Law ("GBL") §§ 349, 350 and 350-a(1), as well as breach of express warranty, breach of implied warranty of merchantability, and unjust enrichment.  As this is a putative class action with an aggregate amount in controversy exceeding five million dollars, subject matter jurisdiction is proper under 28 U.S.C. § 1332(d)(2).

The crux of this case centers on alleged misrepresentations on Natural Brew's label, packaging, and website that it is "natural" when, in fact, it contains artificial ingredients, specifically caramel color and phosphoric acid.  The CAC, as originally submitted, contains illegible photographs of Natural Brew's label and packaging.  Silva has supplemented his papers with more legible copies of the photos contained in the CAC, and Smucker, for its part, has attached its own copy of the label as an exhibit to the motion to dismiss.  *See* Declaration of Joseph Lipari ("Lipari Decl."), Ex. A, ECF No. 12-1; Declaration of Kevin D. Boyce ("Boyce Decl."), Ex. 1, ECF No. 11-2.  I am permitted to take judicial notice of these documents, and I do so now.  *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 400 n.1 (E.D.N.Y. 2010) (holding "the Court may take judicial notice of the actual [food] package, even on a motion to dismiss" because the complaint "makes numerous references to this package"); *see also Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1074 n.1 (N.D. Cal. 2013) (holding motion exhibits were "appropriate for judicial notice as they are packaging labels for ten Gerber products that the [complaint] specifically references, but which are not completely legible [in the complaint]"); *RJ*

2

*Capital, S.A. v. Lexington Capital Funding III, Ltd.*, No. 10-CV-24 (PGG), 2011 WL 3251554, at

*4 (S.D.N.Y. July 28, 2011) ("In determining the sufficiency of a complaint, this Court may

consider . . . 'documents either in plaintiffs' possession or of which the plaintiffs had knowledge

and relied on in bringing suit.'") (quoting *Brass v. Am. Film. Techs., Inc.*, 987 F.2d 142, 150 (2d

Cir. 1993)).  Since the heart of this case concerns the labeling and packaging, the photographs

are reproduced below:



CAC ¶ 7; Lipari Decl., Ex. A.



CAC ¶ 8; Lipari Decl., Ex. A.



Boyce Decl., Ex. 1.

In addition to having the trademark "Natural Brew" prominently displayed on its front, the label also states, in smaller script, that "[t]o give our Root Beer a subtly rich, creamy flavor we add vanilla extract and other natural flavors to our recipe." CAC ¶ 9 (text in CAC altered to match label); Boyce Decl., Ex. 1. The label also represents that Natural Brew "blends

tradition and quality, naturally."  CAC ¶ 8.  On the back side of the label, the Food and Drug

Administration ("FDA")-mandated ingredients list discloses that the product contains caramel

color and phosphoric acid.  *See* Boyce Decl., Ex. 1.

To support his claims, Silva also attaches screenshots of Smucker's website

containing statements that Natural Brew is "made from all natural ingredients," has "no artificial

colors, flavors, or additives, ever," and is "brewed in small batches with the finest natural

ingredients."  CAC ¶ 3, Ex. A.  Silva alleges that Smucker promoted Natural Brew on its website

by making the following statements:

> Natural Brew was specially formulated to meet the consumer's
> need for a quality-crafted, natural carbonated beverage. We make
> Natural Brew using old-fashioned micro-brewing techniques to
> bring out the robust flavor of all key ingredients.   Unlike most
> other soft drink companies, Natural Brew is brewed in small
> batches allowing the ingredients to blend together forming a full,
> rich flavor, free from any artificial additives or preservatives.

CAC ¶ 4, Ex. B.

> We chose the name Natural Brew® to reflect the hand-crafted,
> premium nature of our products.  Far from the typical options, our
> sodas are lovingly brewed in small batches from high-quality
> natural and organic ingredients, using time-honored traditional
> methods.

CAC ¶ 5, Ex. C.

> We utilize traditional brewing methods that have been perfected
> over centuries. These simple processes allow the true essences of
> the ingredients to stand out, creating an honest and bold flavor
> experience unlike any other. The flavor essences are then carefully
> blended with other natural ingredients to give our handcrafted
> brews a complex flavor profile.

CAC ¶ 6, Ex. D.

DISCUSSION

A.    *The Legal Standards*

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012).  In making this determination, a court should assume all well-pleaded allegations in the complaint to be true "and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citations omitted)).  In deciding a motion to dismiss, a court considers "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken . . . ." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

B.    *Preemption*

Smucker argues first that Silva's claims should be dismissed because they are expressly preempted by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343 *et seq.* ("FDCA").[1]  Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, state laws that "interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution" are invalid. *Gibbons v. Ogden*, 22 U.S. 1, 211 (1824).  An otherwise valid state law is preempted, *inter alia*, if Congress expressly preempts the state law. *See Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 603-05 (1991).

---

[1]    Smucker's preemption argument solely concerns express preemption.  Courts have found that the FDCA and Nutrition Labeling and Education Act of 1990 ("NLEA") do not impliedly preempt state law claims alleging foods were mislabeled as "natural." *See, e.g.*, *Gedalia v. Whole Foods Mkt. Servs., Inc.*, 53 F. Supp. 3d 943, 949 (S.D. Tex. 2014) (finding no implied preemption of "natural" food claims under the FDCA as amended by the NLEA).

The Supreme Court has instructed that the task of determining whether a federal statute has preempted state law is guided by two basic principles. First, "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). "Second, [i]n all pre-emption cases, and particularly in those in which Congress has legislated . . . in a field which the States have traditionally occupied, . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* at 1194-95 (quoting *Medtronic*, 518 U.S. at 485) (internal quotation marks omitted); *accord New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009). Both the Supreme Court and the Second Circuit have recognized this presumption in matters of public health and safety, including the regulation of food and drugs. *See id.*; *Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 715-19 (1985); *see also Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in the protection of their people against fraud and deception in the sale of food products at retail markets within their borders." (quotations and alterations omitted)). Furthermore, consistent with these principles, where Congress enacts an express preemption clause, the presumption against preemption requires courts to read the clause narrowly. *See Medtronic*, 518 U.S. at 485 (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518 (1992)).

1.    *The FDCA and the NLEA*

The FDCA empowers the FDA to (a) promote the public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," 21 U.S.C. § 393(b)(2)(A); (b) promulgate regulations pursuant to this authority; and (c) enforce its regulations through

administrative proceedings.  *See* 21 C.F.R. § 7.1 *et seq.*  There is no private right of action under the statute.  *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 810 (1986).

Congress amended the FDCA in 1990 with the NLEA to "clarify and to strengthen the FDA's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods."  *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 223 (2d Cir. 1998) (quoting H. R. Rep. No. 101-538, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337).  Congress included an express preemption clause in the NLEA that prohibits state and local governments from adopting inconsistent food labeling requirements.  *See* 21 U.S.C. § 343-1(a).  The NLEA makes clear that it "shall not be construed to preempt any other provision of State law, unless such provision is *expressly preempted* under [21 U.S.C. § 343-1(a)]."  Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364 (21 U.S.C. § 343-1 note) (emphasis added); *N.Y. State Restaurant Ass'n*, 556 F.3d at 123.

The NLEA's express preemption clause preempts any state requirement that is not identical, *inter alia*, to that established in Section 343(k).[2]  *See* 21 U.S.C. § 343-1(a)(3).  Section 343(k), in turn, provides that a food will be deemed misbranded "[i]f it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless it bears labeling stating that fact."  21 U.S.C. § 343(k).  As a result, there are two ways Silva may escape the NLEA's preemptive force: (1) if Silva seeks to impose requirements that are not with respect to claims of the sort described in Section 343(k); or (2) the requirements that Silva seeks to impose are identical to those imposed by the FDCA, as amended by the NLEA.  *See Ackerman v. Coca-Cola Co.*, No. 09-CV-0395 (JG)(RML), 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010).[3]

---

[2]        Smucker bases its preemption argument on 21 U.S.C. § 343(k), which governs artificial flavoring, artificial coloring, and chemical preservatives.  Def. Br. at 10-11.

[3]        "A requirement is a rule of law that must be obeyed; an event, such as a jury verdict, that merely motivates an optional decision is not a requirement."  *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 445 (2005).

2.      *Claims Imposing Different Requirements from Those of Section 343(k)*

Silva contends that Smucker has made false and misleading statements with respect to its Natural Brew in violation of New York's GBL.  *See* CAC ¶¶ 48-49, 78-109.  Smucker asserts that "[b]ecause the complex scheme of FDA regulations for added colors, flavors, and preservatives . . . fall within the scope of the NLEA preemption provision at 21 U.S.C. § 343-1(a)(3), any different labeling requirements sought to be imposed under state law in this case would be preempted."  Def. Br. at 10.  According to Smucker, Silva "seeks to require that additional label statements of his choosing be placed on an otherwise federally-compliant label."  Def. Reply at 6.

Although the CAC discusses how Smucker's labeling violates the FDCA and relevant FDA regulations, *see, e.g.*, CAC ¶ 46 ("the product is misbranded under, *inter alia*, the FDCA and New York law"), it does not go so far as to rest all of Smucker's state law liability on violations of federal law.  The CAC not only challenges the ingredients list, it further alleges that Smucker's use of the words "natural" and "naturally" on the label, packaging, and website misleads consumers with respect to those ingredients.  *See* CAC ¶¶ 16-20, 48-49, 57, 63-65.  As such, Silva has raised different claims from those described in 21 U.S.C. § 343(k), and are thus beyond the preemptive reach of the FDCA.  *See Ault v. J.M. Smucker Co.*, No. 13-CV-3409 (PAC), 2014 WL 1998235, at *3 (S.D.N.Y. May 15, 2014) ("Eliminating 'All Natural' has no effect on Defendant's ingredient labeling and therefore cannot conflict with FDA labeling requirements."); *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 336 n.3 (3d Cir. 2009) (noting "an important distinction" in the context of express preemption that state law claims regarding "All Natural" labeling go to what a company cannot put on a label for the purposes of commercial marketing, and § 343(k) is "only a disclosure requirement—*i.e.*, it regulates only

9

what companies *must* place on a label" (emphasis added)); *Parker v. J.M. Smucker Co.*, No. 13-0690 (SC), 2013 WL 4516156, at *4 (N.D. Cal. Aug. 23, 2013) (holding NLEA labeling requirements do not preempt a claim of false advertisement under California law; "It is not even implied in Plaintiff's theory that Defendant should have labeled the product differently, just that it should not have included a certain label that is allegedly false or misleading."); *Larsen v. Trader Joe's Co.*, 917 F. Supp. 2d 1019, 1024-25 (N.D. Cal. 2013) (finding "all natural" claims were not preempted by FDCA or FDA regulations); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1374-76 (S.D. Fla. 2014) (same); *see also Ackerman*, 2010 WL 2925955, at *7 (holding that the NLEA's express preemption clause covering a different provision, § 343(r)(1), "preempts only claims based on statements that expressly or by implication characterize the level of a nutrient or the relationship of a nutrient to a disease or health related condition; claims based on statements not falling into those categories are not preempted").

        In other words, compliance with Section 343(k)'s disclosure requirements concerning colors, flavors, and preservatives does not give a seller free rein to deceptively mischaracterize those ingredients on other parts of its label in contravention of state law.  Silva alleges, in essence, that Natural Brew is unlawfully advertised as "natural."  The FDA has not approved Smucker's labeling its products "natural," and Smucker does not contend otherwise. Indeed, the FDA has not promulgated any formal rule governing when food products may or may not be labeled "natural" that would have preemptive effect.  *See In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 (RRM)(RLM), 2013 WL 4647512, at *7 (E.D.N.Y. Aug. 29, 2013) (noting the FDA "issued a final rule in 1993, but explicitly declined to adopt a definition of the term 'natural.'"); *Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. C 10-4387 (PJH), C 10-4937 (PJH), 2011 WL 2111796, at *6-10 (N.D. Cal. May 26, 2011) (finding no indication of any

10

regulation of the use of an adjective such as "natural" on a food label). Accordingly, the FDCA, as amended by the NLEA, does not preempt Silva's claims.[4]

### 3.     *Ingredient Disclosures Under Federal Law*

Separate and apart from the "natural" representations on the label, Silva also alleges that the Natural Brew ingredients list fails to comply with the FDCA and FDA labeling regulations with respect to two ingredients: caramel color and phosphoric acid. *See* CAC ¶¶ 40-47, 50. The NLEA's express preemption clause, by its terms, permits states to establish requirements identical to those mandated by the FDCA. *See* 21 U.S.C. § 343-1(a)(3) (prohibiting only requirements that are "not identical to," *inter alia*, 21 U.S.C. § 343(k)). State statutes do not impose any additional requirement merely by providing a damage remedy for conduct that would otherwise violate federal law, even if the federal statute provides no private right of action. *See Bates*, 544 U.S. at 448 (preemption of additional *requirements* "[does] not preclude States from imposing different or additional *remedies*") (emphasis in original); *see also Medtronic*, 518 U.S. at 513 (O'Connor, J., concurring in part and dissenting in part) ("[T]he threat of a [state law] damages remedy" does not impose a "requirement" where "the requirements imposed on [defendants] under state and federal law do not differ."). Accordingly, if Silva is seeking only a state law remedy for a federal infraction, his claim should be allowed to proceed unpreempted. *See Ackerman*, 2010 WL 2925955, at *6 ("claims under state laws that parallel the FDCA's requirements are not preempted"); *Ivie v. Kraft Foods Global, Inc.*, No. C-12-02554-RMW, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013) ("Because defendant does not seek to impose any requirements in excess [of] 21 U.S.C. § 343(k), the claims based on 'no

---

[4]     Silva's breach of warranty claims survive preemption for an additional reason. The Supreme Court has held that "breach of warranty claims do not impose an additional 'requirement' under state law, because the duty to honor a promise voluntarily undertaken '[can] not fairly be said to be 'imposed under state law,' but rather is best understood as undertaken by the manufacturer itself,' and are therefore not preempted." *Ackerman*, 2010 WL 2925955, at *24 (quoting *Cipollone*, 505 U.S. at 526).

artificial sweeteners or flavors' labels on the challenged drink mix are not preempted and survive the motion to dismiss.").

The FDCA, as amended by the NLEA, mandates the identification of artificial flavors, artificial colors, and chemical preservatives.  *See* 21 U.S.C. § 343(k).  The FDA has promulgated regulations that a product containing artificial flavors, artificial colors, or chemical preservatives must disclose that fact on its container or wrapper "as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use."  21 C.F.R. § 101.22(c).  The other subsections of 21 C.F.R. § 101.22 provide additional guidance for how to disclose these ingredients.  For instance, a food containing a color additive that is not subject to certification may list the ingredient on the label as "_____ color."  21 C.F.R. § 101.22(k)(2).  For chemical preservatives, the label must state "both the common or usual name of the ingredient(s) and a separate description of its function, e.g., 'preservative', 'to retard spoilage', 'a mold inhibitor', 'to help protect flavor' or 'to promote color retention'."  21 C.F.R. § 101.22(j).

The Natural Brew label clearly discloses both caramel color and phosphoric acid as ingredients.  *See* Boyce Decl., Ex. 1.  However, Silva alleges that since caramel color is an "artificial coloring" and phosphoric acid is an "artificial flavor," the label should contain additional statements disclosing those facts under 21 C.F.R. § 101.22(c).  He also contends that phosphoric acid is a "chemical preservative," which requires a separate description of its preservative function on the label under 21 C.F.R. § 101.22(j).  Smucker maintains that its label is federally compliant, and that to the extent Silva's claims impose additional disclosure obligations, they should be dismissed on preemption grounds.

a.      *Caramel Color*

With respect to the caramel color ingredient, I agree with Smucker.  The CAC states that caramel color is an artificial flavoring because it is a "color additive."  CAC ¶¶ 21-22. The manufacturer of a food containing a color additive that is not subject to certification can list the ingredient on the label as "_____ color."  *See* 21 C.F.R. § 101.22(k)(2).  Since caramel color is not subject to certification, *see* 21 C.F.R. § 72.85(e), one appropriate way to list this ingredient is to use the term "caramel color" in the ingredients list.  By doing just that, Smucker has complied with the FDCA and FDA's implementing regulations for branding color additives. In demanding a further statement that identifies "caramel color" as artificial, Silva seeks to impose disclosure requirements beyond those mandated by federal law and that are well within the scope of the NLEA's preemption provision.  *See* 21 U.S.C § 343–1(a).  Thus, to the extent that Silva's state law claims are predicated on caramel color being misbranded under federal law, I find them preempted.  *See Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 283 (S.D.N.Y. 2014); *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008).[5]

b.      *Phosphoric Acid*

However, the same cannot be said for phosphoric acid.  The CAC alleges that phosphoric acid functions, *inter alia*, to impart flavor to Natural Brew, and qualifies as an artificial flavor under 21 C.F.R. § 101.22(a)(1).  *See* CAC ¶¶ 26-27.  That regulation defines artificial flavor or artificial flavoring as "any substance, the function of which is to impart flavor,

---

[5]     However, that Natural Brew's ingredients list properly discloses caramel color in accordance with federal law does not preempt Silva's claims that Natural Brew's label misrepresents the product as being "natural." An FDA-mandated ingredients list on the back of the label does not inoculate a manufacturer from claims that they misrepresented the product on the front of the label; consumers are not expected to scour a label to ensure that prominent representations are not false.  *See Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 464 (E.D.N.Y. 2013) ("[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast,

herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or

fermentation products thereof." 21 C.F.R. § 101.22(a)(1). The CAC alleges that none of these

derivative exceptions apply to phosphoric acid. CAC ¶ 28. Since the Natural Brew label and

packaging contain no disclosure that phosphoric acid is an artificial flavor, Silva alleges the

product is in violation of 21 C.F.R. § 101.22(c). CAC ¶¶ 26-34, 41, 43, 46. Smucker, for its

part, asserts that it has satisfied its regulatory obligations in labeling phosphoric acid by its

common and usual name and disclosing the presence of "other flavors" on the front of the label.

*See* Def. Br. at 9. To support its argument, Smucker cites to 21 C.F.R. §§ 101.4(a), 101.22(h).

I find Smucker's argument unpersuasive. Though 21 C.F.R. § 101.4(a) directs

that ingredients "shall be listed by common or usual name" on the label, the following subsection

states, "The name of an ingredient shall be a specific name and not a collective (generic) name,

except that: (1) Spices, flavorings, colorings and chemical preservatives shall be declared

according to the provisions of § 101.22." 21 C.F.R. § 101.4(b)(1). Section 101.22(c), in turn,

requires disclosing the existence of an artificial flavor on the label. 21 C.F.R. § 101.22(c). Thus,

listing an artificial flavor by its common name under Section 101.4(a) does not relieve a

manufacturer of its obligation under Section 101.22(c) to disclose the existence of artificial

flavoring on the label.

Section 101.22(h) is similarly unavailing. This regulation simply holds that "[t]he

label of a food to which flavor is added shall declare the flavor in the statement of ingredients in

the following way: (1) Spice, natural flavor, and artificial flavor may be declared as 'spice',

'natural flavor', or 'artificial flavor', or any combination thereof, as the case may be." 21 C.F.R.

§ 101.22(h).  The Natural Brew label does not state that it contains "artificial flavor," only "other flavors."

Accordingly, I find that Silva has plausibly stated that phosphoric acid is an artificial flavor and is misbranded under the FDCA and relevant FDA regulations.  *See Engurasoff v. Coca-Cola Co.*, No. C 13-03990 JSW, 2014 WL 4145409, at \*3-4 (N.D. Cal. Aug. 21, 2014).

The CAC also claims that phosphoric acid is a chemical preservative.  CAC ¶¶ 37-39.  It alleges that the ingredient "prevents or retards deterioration" as used in Natural Brew and therefore meets the FDA's definition of "chemical preservative."  *Id.*  Section 101.22(a)(5) defines "chemical preservative" as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."  21 C.F.R. § 101.22(a)(5).

Smucker disputes that Natural Brew contains phosphoric acid "in concentrations sufficient to do anything but impact flavor [and/or] acidify the product."  *See* Def. Br. at 9.  But this is a question of fact that cannot be decided as a matter of law at this stage of the case.  *See Engurasoff*, 2014 WL 4145409, at \*3-4 (refusing to conclude as a matter of law that phosphoric acid is not an artificial flavor or chemical preservative in Coca-Cola); *Ivie*, 2013 WL 685372, at \*10 ("[T]he factual determinations of whether maltodextrin is used as a sweetener and/or sodium citrate is used as a flavoring agent in [Country Time Pink Lemonade Drink Mix] . . . are inappropriate for determination on a motion to dismiss.").  Assuming the truth of all facts on the face of a well-pleaded complaint, I cannot conclude as a matter of law that the Natural Brew

label conforms to the FDCA and FDA regulations regarding the disclosures of chemical preservatives in food.  *See id.*[6]

C.    *Primary Jurisdiction*

Smucker argues, in the alternative, that I should dismiss or stay this action to allow the FDA to decide which products may be properly labeled "natural" under the doctrine of primary jurisdiction.  At the outset, I note that since this doctrine is a prudential, rather than jurisdictional limitation, it is within my discretion to retain or relinquish jurisdiction.  *See Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993).  Moreover, the primary jurisdiction doctrine is "relatively narrow" in scope, and has been applied only when a lawsuit raises an issue committed by Congress in the first instance to an agency's determination.  *Goya Foods, Inc. v. Tropicana Products, Inc.*, 846 F.2d 848, 851 (2d Cir. 1988).

In this case, assessing whether a label is false or deceptive is well within the traditional realm of the court's competence and does not necessitate deferring to an agency's technical expertise.  *Id.*

Moreover, district courts have recently sought guidance from the FDA on this issue, and the FDA has declined to devote its limited resources to promulgating a formal rule on which products may be branded "natural."  *See, e.g.*, *Ault*, 2014 WL 1998235, at *3.  The CAC attaches one such letter in which the FDA did not offer an opinion as to whether food containing substances derived from genetically modified seeds could be labeled "natural."  *See* CAC, Ex. F, Letter from Leslie Kux to the Hon. Yvonne G. Rogers, the Hon. Jeffrey S. White and the Hon. Kevin McNulty (Jan. 6, 2014).[7]

---

[6]     The CAC does not allege, and Silva has not argued, that the Natural Brew label violates 21 U.S.C. § 343(a) or 21 C.F.R. § 101.22(i).

[7]     In this letter, the FDA confirmed it has not promulgated a formal definition of the term "natural" and that "its policy regarding the use of the term 'natural' on food labeling means that 'nothing artificial or synthetic

Accordingly, I decline to exercise my discretion to stay this case on the ground of primary jurisdiction. *See In re Frito-Lay*, 2013 WL 4647512, at *8 (refusing to stay action so FDA could address whether foods containing bioengineered ingredients may be labeled "natural"); *Janney v. Mills*, 944 F. Supp. 2d 806, 811-15 (N.D. Cal. 2013) (rejecting primary jurisdiction argument and noting that "in repeatedly declining to promulgate regulations governing the use of 'natural' as it applies to food products, the FDA has signaled a relative lack of interest in devoting its limited resources to what it evidently considers a minor issue"); *Krzykwa v. Campbell Soup Co.*, 946 F. Supp. 2d 1370, 1374-75 (S.D. Fla. 2013) (declining to dismiss on primary jurisdiction grounds where plaintiff alleged foods containing genetically modified corn were not "100% natural").

    D.    *Violation of New York Consumer Statutes*

        1.    *Legal Standard*

The New York Consumer Protection Act, which includes sections 349, 350, and 350-a of the New York GBL, "seeks to secure an honest market place where trust, and not deception, prevails." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002) (internal quotation marks omitted). Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GBL § 349(a); *see also Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014). To state a claim under Section 349, a plaintiff must allege (1) that

---

(including color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in food." CAC ¶ 13, Ex. F at 2 (citing 58 Fed. Reg. 2302, 2407 (1993)). Also attached to the CAC is a screenshot of the FDA's website, stating, "From a food science perspective, it is difficult to define a food product that is 'natural' because the food has probably been processed and is no longer the product of the earth. That said, the FDA has not developed a definition for use of the term natural or its derivatives. However, the agency has not objected to the use of the term if the food does not contain added color, artificial flavors, or synthetic substances." CAC ¶ 12, Ex. E. The screenshot shows that the website was last updated in April 2012. The FDA's website was updated again on June 8, 2015, though the text has not materially changed. *See* http://www.fda.gov/aboutfda/transparency/basics/ucm214868.htm (last accessed Sept. 14, 2015).

defendant was engaged in a "consumer-oriented" business practice or act; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).

Section 350 of the GBL prohibits false advertising.[8]  A cause of action for false advertising is stated when the plaintiff alleges that "the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *DeAngelis v. Timberpeg E., Inc.*, 858 N.Y.S.2d 410, 414 (3d Dep't 2008) (quoting *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (2d Dep't 2002)).  Courts apply an objective standard in determining whether acts or practices are materially deceptive or misleading to "a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995); *Andre Strishak & Assocs.*, 752 N.Y.S.2d at 403.

2. *Discussion*

Smucker alleges that Silva "does not identify any statement from the label or packaging for the Root Beer that he claims is false or misleading." Def. Br. at 1.  In its reply brief, Smucker reaffirms that "nowhere in the CAC does Plaintiff allege that the product trademark or on-label statements are false and misleading." Def. Reply at 1.

I disagree.  Paragraphs 7 through 10 of the CAC incorporate actual photographs of the Natural Brew label and packaging, and allege that Smucker represents Natural Brew to be "natural," that it "blends tradition and quality, naturally," and is the result of "add[ing] vanilla extract and other natural flavors to our recipe," all of which are direct quotes from the label.

---

[8]       Silva's third claim for relief alleges violations of N.Y. GBL § 350-a(1).  *See* CAC ¶¶ 100-109. However, that section of New York's GBL defines the terms and scope of N.Y. GBL § 350; it does not provide grounds for a separate cause of action.  Accordingly, I construe all allegations in the CAC that Smucker violated Section 350-a(1) as allegations that Smucker actually violated Section 350.

CAC ¶¶ 7-9.  The CAC further alleges that, "Smucker uses its 'Natural Brew' product line to fool consumers into believing that its root beer is not artificially flavored, colored, or chemically preserved.  In so doing, Smucker has misled and deceived consumers, and it has violated consumer protection laws."  CAC ¶ 10.  In a later paragraph, the CAC states:

> Plaintiff purchased the product in New York and paid a premium for the product because he saw and relied upon the product labeling, product advertising, and read the packaging which stated, *inter alia*, that the product is "Natural," and a) "made from all natural ingredients;" b) free from artificial flavors or preservatives and free from any artificial additives or colors; and, c) "brewed in small batches with the finest natural ingredients."  These representations were material to Plaintiff's decision to make the purchase and buy the product at a premium.

CAC ¶ 58.  A plain reading of the CAC provides sufficient notice to Smucker, under Fed. R. Civ. P. 8, that Silva's allegations of misrepresentations are based, in part, on Smucker's packaging and labeling.

Alternatively, Smucker argues for dismissal of the website-based claims on grounds that it is implausible that the website's representations would influence any consumer's choice to purchase Natural Brew.  But Silva himself has pled that he relied in part on the website's representations in purchasing Natural Brew, *see* CAC ¶ 58, and at this stage, I must assume all well-pleaded facts are true and draw all inferences in favor of the plaintiff.  Moreover, the statements on Smucker's website, on their face, appear to be oriented towards consumers, as opposed to investors or employees.  I cannot conclude as a matter of law that no consumer could plausibly base his decision to purchase Natural Brew, at least in part, on the website's representations.

However, I am dismissing Silva's claims under GBL §§ 349, 350, and 350-a[9] on behalf of putative class members who neither viewed the website in New York nor purchased Natural Brew in New York.[10]   The New York Court of Appeals has ruled that while the reach of the GBL does not "turn on the residency of the parties," "the transaction in which the consumer is deceived must occur in New York."  *See Goshen*, 98 N.Y.2d at 324-25; *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123-24 (2d Cir. 2013) (applying the territoriality requirement to both §§ 349 and 350); *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 547 (S.D.N.Y. 2014) ("[T]o state a claim under either Section 349 or Section 350, the plaintiffs must show, at the very least, that the deceptive transaction occurred in New York in order to satisfy the territorial requirement.").

E.   *Express Warranty*

Courts in this Circuit have held that labeling a product "natural" can constitute an actionable warranty under New York law.  *See, e.g.*, *Ault*, 2014 WL 1998235, at *6 ("Defendant's labeling . . . as 'All Natural' is an actionable warranty."); *Goldemberg*, 8 F. Supp. 3d at 482-83 (allowing breach of warranty claim based on "Active Naturals" labeling and advertising on personal care products to go forward); *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 (RRM)(RLM), 2013 WL 4647512, at *27 (E.D.N.Y. Aug. 29, 2013) ("All Natural" label on potato chip packaging constituted express warranty under New York law); *see also Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014) ("A food label can create an express warranty."); *Vicuna v. Alexia Foods, Inc.*, No. C 11-6119 (PJH), 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) ("All Natural" label on potatoes was an express warranty).

---

[9]   *See supra* footnote 8.
[10]   The CAC alleges that Silva purchased Natural Brew in New York.  CAC ¶ 58.

Under Section 2–313(1) of the New York Uniform Commercial Code, a seller creates an express warranty by making "[a]ny affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain."  N.Y. U.C.C. § 2–313(1)(a).  Moreover, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  N.Y. U.C.C. § 2–313(1)(b); *see also Scientific Components Corp. v. Sirenza Microdevices, Inc.*, 399 F. App'x 637, 639 (2d Cir. 2010).  Generalized statements by the defendant, however, do not support an express warranty claim if they are "such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely."  *Hubbard v. General Motors Corp.*, No. 95-CV-4362, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996) (internal quotations omitted).  What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss.  *See Ault*, 2014 WL 1998235, at *6.  I cannot say as a matter of law at this early stage of the case that a reasonable consumer could not interpret Smucker's representations to be a factual claim about Natural Brew's ingredients.

Next, Smucker asks the Court to dismiss Silva's express warranty claim because Silva does not allege that he was in privity of contract with Smucker.  But under New York law, a plaintiff need not be in privity with a defendant to bring an express warranty claim based on misrepresentations contained in "public advertising or sales literature."  *Weisblum v. Prophase Labs, Inc.*, No. 14-CV-3587 (JMF), 2015 WL 738112, at *10 (S.D.N.Y. Feb. 20, 2015); *Goldemberg*, 8 F. Supp. 3d at 482 ("A buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty may include specific representations made by a manufacturer in its sales brochures or advertisements." (quoting

21

*Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405, 407 (3d Dep't 2008)).

Natural Brew's website copy constitutes "public advertising and sales literature." Thus, on the

facts of this case, privity is not required to plead a breach of express warranty claim under New

York law.

      F.    *Implied Warranty of Merchantability*

      However, the breach of implied warranty claim must be dismissed because the

CAC fails to allege that Natural Brew was not, in fact, merchantable. Under the UCC, as

adopted in New York, if a seller is a merchant, there is an implied contract that the goods will be

of merchantable quality. *See Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258 (1995) (citing

section 2–314(2)(c) of the UCC). This is "a guarantee by the seller that its goods are fit for the

intended purpose for which they are used and that they will pass in the trade without objection."

*Wojcik v. Empire Forklift, Inc.*, 783 N.Y.S.2d 698, 700-01 (2004) (internal quotation marks

omitted). However, the warranty does not mean that the product will fulfill a "buyer's every

expectation" but simply "provides for a minimum level of quality." *Viscusi v. Proctor &*

*Gamble*, No. 05-CV-01528 (DLI)(LB), 2007 WL 2071546, at *13 (E.D.N.Y. July 16, 2007)

(quoting *Denny*, 87 N.Y.2d at 259). Where the sale of a food or beverage is concerned, courts

have ruled that the product need only be fit for human consumption to be of merchantable

quality. *See Ackerman*, 2010 WL 2925955, at *25 (dismissing New York breach of implied

warranty of merchantability claim for failure to establish beverage was not "merchantable" in

that it did not meet "a minimum level of quality"); *Donahue v. Ferolito, Vultaggio & Sons*, 786

N.Y.S.2d 153, 155 (1st Dep't 2004) (breach of implied warranty of merchantability claim

properly dismissed "on the ground that these merchantable beverages caused no ill effects and

were fit for their intended purpose, namely, liquid refreshment").

Although the CAC asserts that Natural Brew does not conform to the promises made on its containers, labels, and literature, *see* CAC ¶ 121, it makes no allegation that Natural Brew is unfit for human consumption.  Accordingly, Silva has failed to adequately plead a breach of implied warranty claim.

G.      *Unjust Enrichment*

Finally, Smucker urges the Court to dismiss the unjust enrichment claim since it is duplicative of Silva's other causes of action.  To state a claim for unjust enrichment under New York law, a plaintiff must plead that (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) the circumstances were such that equity and good conscience require the defendant to make restitution.  *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 471 (E.D.N.Y. 2013); *accord Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) ("The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which 'in equity and good conscience' should be paid to the plaintiff.").

The New York Court of Appeals has held that an unjust enrichment claim is available "*only* in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Corsello*, 18 N.Y.3d at 790 (emphasis added).  It is not a "catchall cause of action to be used when others fail" and is typically limited to instances where "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled."  *Id.*  An unjust enrichment claim that merely "duplicates, or replaces, a conventional contract or tort claim" is insufficient.  *Id.* at 790-91.

Some post-*Corsello* decisions involving the deceptive labeling of consumer goods have dismissed unjust enrichment claims as duplicative or otherwise unavailable at the motion to

dismiss stage. *See, e.g., Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290-91 (S.D.N.Y. 2014) (dismissing unjust enrichment claim stemming from defendants' misrepresentation that its milk products were fat-free); *Goldemberg*, 8 F. Supp. 3d at 483-84 (S.D.N.Y. 2014) (dismissing an unjust enrichment claim involving allegations that defendant misled consumers that its skin-care products, whose packaging prominently displayed the phrase "Active Naturals," were made exclusively from natural ingredients); *see also Rose v. Rahfco Mgmt. Grp., LLC*, No. 13-CV-5804 (VB), 2014 WL 7389900, at *7 (S.D.N.Y. Dec. 15, 2014) (limiting unjust enrichment to "gratuitous donees" of illicitly gained funds); *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311 (JSR), 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (holding that plaintiff adequately pleaded claims for violation of GBL § 349, negligent misrepresentation, and fraud, but dismissing unjust enrichment claim as duplicative).

In light of *Corsello*, the fact that unjust enrichment has a longer statute of limitations than Silva's other claims is a thin reed upon which to find it non-duplicative. On the papers before me, I cannot conceive of any set of facts upon which Silva would fail to establish his breach of warranty and statutory claims, but nonetheless succeed in proving unjust enrichment. As such, I dismiss the unjust enrichment claim as duplicative of Silva's other claims.

H.     *Damages*

Smucker's claims that Silva's allegations are insufficient to allege damages are unpersuasive. The CAC alleges that Silva paid a price premium for Natural Brew due to Smucker's misrepresentations. *See* CAC ¶¶ 50, 56, 58-59, 103. This is sufficient to state a claim under New York's consumer protection law. *See, e.g., Goldemberg*, 8 F. Supp. 3d at 481 ("[A] plaintiff may properly allege . . . the price of the product was inflated as a result of [the]

24

defendant's deception.") (collecting cases); *Ackerman*, 2010 WL 2925955, at *23 ("Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations."); *cf. Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56 (1999) (plaintiffs' claim to injury is flawed because, *inter alia*, they do not allege that "the cost of cigarettes was affected by the alleged misrepresentation").

CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is granted in part and denied in part.  The Court grants the motion with respect to Counts 5 (breach of implied warranty of merchantability) and 6 (unjust enrichment), and denies the motion with respect to Count 4 (breach of express warranty).  As to Counts 1, 2, and 3, (GBL §§ 349, 350, and 350-a(1), respectively) the motion is denied, except to the extent these counts are being pursued on behalf of putative class members who neither viewed the Natural Brew website in New York nor purchased Natural Brew in New York.

So ordered.


John Gleeson, U.S.D.J.

Dated: September 14, 2015
      Brooklyn, New York

25